[Civ. No. 11697.   Second Appellate District, Division One.—March 10, 1939.]

ALBERT LIVEZEY, Respondent, v. MARIE SNOW ROGERS, Appellant.

Joseph A. Spray and Charles P. Gould for Appellant.

Glenn A. Lane and R. R. Sleeper for Respondent.

YORK, P. J.—Respondent was awarded a verdict by the jury in the sum of $6,214.09 for damages for injuries sustained by him in a collision between his motorcycle and the automobile of appellant at the intersection of Second Street and Commonwealth Avenue in the city of Alhambra. This appeal is prosecuted from the judgment entered pursuant to such verdict, appellant's motions for nonsuit and new trial having been denied by the trial court.

Appellant here urges that the court erred in refusing to submit to the jury the question of the ownership of respondent's motorcycle at the time the accident occurred; that the court erred in instructing the jury as a matter of law that respondent was operating an authorized emergency vehicle at the time of the collision; that the court also erred in instructing the jury on the question of an emergency call and in refusing to instruct upon the question of an emergency vehicle, and finally, that the court erred in unduly restricting the time for argument of the cause to the jury.

The record herein reveals that respondent was a motorcycle officer employed by the city of Alhambra, and that on or about 3 o'clock in the afternoon of June 20, 1936, he was on

duty at the Alhambra Police Station at which time and place he received an order from his superior officer to make what is termed an "ambulance follow-up" to Curtiss and Hellman Streets in said city. Immediately thereafter, respondent started his motorcycle, opened the siren and proceeded south on Second Street in front of a police car which was also going to the "ambulance follow-up". Respondent crossed Main Street which is about 150 feet south of his starting point and continued for about 1200 feet to the intersection of Second Street and Commonwealth Avenue, traveling at a speed of from 40 to 45 miles per hour. As respondent approached the intersection in question, he saw appellant's car on Commonwealth about 150 feet west of Second Street, but he did not see it again until the instant of impact in the center of the southwest corner of the intersection. Respondent did not make the boulevard stop before entering Commonwealth Avenue, but the police car following him stopped. Appellant was traveling easterly on Commonwealth at a speed of from 30 to 35 miles per hour and saw respondent's motorcycle when it was 40 to 50 feet north of the north curb of Commonwealth Avenue as it traveled south on Second Street, her automobile at that time being on the west curb line of Commonwealth just entering Second Street. Appellant did not hear respondent's siren until she entered the intersection, and she applied her brakes just before the impact. Commonwealth is a boulevard and boulevard stops are posted on Second Street at said intersection.

Appellant contends that section 517, as it read at the time of the accident, it having since been repealed (Stats. 1937, p. 168), and section 554 of the Vehicle Code which provide for the exemptions allowed an authorized emergency vehicle and enumerate the rights and duties incident to its use, must be construed in the light of section 44 of said code. In other words, before the operator of an authorized emergency vehicle is entitled to disregard certain provisions of the Vehicle Code by virtue of the exemptions granted by said sections 517 and 554, and before other persons using the highways must yield the privileges conferred by these sections to an emergency vehicle, it must first be shown that the vehicle claiming such rights and privileges is in fact an authorized emergency vehicle within the definition of such under said section 44.

It is undisputed that at the time and place in question respondent drove his motorcycle through a boulevard stop duly posted by a boulevard stop sign erected by the city of Alhambra pursuant to an authorizing ordinance, and that appellant was operating her automobile upon a through boulevard designated as such by a city ordinance of the city of Alhambra and was traveling within the speed limit provided by law under such a situation. At the trial of the action it was the contention of appellant that respondent at the time the accident occurred was not exempted from the obligations imposed by the Vehicle Code, and that he was under a duty to exercise a boulevard stop at the intersection where the accident occurred before proceeding to cross the boulevard. It is here contended that the respondent neither established as a matter of law nor of fact his right to claim the exemption from the obligations of the Vehicle Code permitted under certain specified circumstances to the operators of authorized emergency vehicles.

Section 44 of the Vehicle Code defines an authorized emergency vehicle as follows:

"(a) A vehicle publicly owned and operated by a police or fire department or traffic law enforcement officer in responding to emergency calls or in traffic patrol duty.

"(b) A motorcycle, either publicly or privately owned, operated by a police or traffic law enforcement officer in enforcing the provisions of this code. . . . "

Section 517 of the Vehicle Code, as it read at the time the accident herein occurred, provided as follows (Stats. 1935, p. 180):

"(a) The speed laws shall not apply to the driver of an authorized emergency vehicle when driving in response to an emergency call or when in the immediate pursuit of an actual or suspected violator of the law, nor to a licensed physician when driving in response to emergency calls.

"(b) The provisions of this section shall not relieve any driver of an authorized emergency vehicle or any licensed physician from the duty to drive with due regard for the safety of all persons using the highway nor shall the provisions of this section protect any such driver or any licensed physician from the consequences of an arbitrary exercise of the privileges declared in this section."

Section 554 of the Vehicle Code provides:

"Upon the immediate approach of an authorized emergency vehicle giving audible signal by siren:

"(1) The driver of every other vehicle shall yield the right of way and shall immediately drive to a position paralled to, and as close as possible to, the right hand edge or curb of the highway clear of any intersection and thereupon stop and remain in such position until such authorized emergency vehicle has passed, except when otherwise directed by a police or traffic officer. . . . "

It is contended by appellant that the mere fact that respondent at the time of the accident was going to an "ambulance follow-up" does not bring him within the purview of section 44, *supra*, making his vehicle an authorized emergency vehicle; and that because of the failure of respondent to establish the precise nature of the mission in question, the jury had no evidence before it upon which to determine whether or not the vehicle was an authorized emergency vehicle. Consequently, it was prejudicial error for the trial court to instruct the jury as a matter of law that respondent was operating an authorized emergency vehicle.

Respondent testified that an ambulance follow-up call is "where the Alhambra Emergency Ambulance has been called out on some kind of an emergency case"; and that when such a call is received at the police station, an officer must go to the scene of the accident as quickly as possible, either picking up another officer on the way or a motorcycle officer as soon as one is found available. With reference to this question, the chief of police testified: "On all ambulance follow-up calls, if an officer was alone he was to pick up another officer, and particularly a motorcycle officer, so that when they got to the scene of the accident one man could take care of the traffic and the other take care of the accident. One man alone at an accident was not enough". Other than this testimony, the record is silent with regard to the nature of the errand upon which respondent was bound at the time the accident occurred.

Whether a given vehicle falls within the category of subdivisions (a) and (b) of section 44, *supra*, two factors must be taken into consideration, namely, the type of ownership, whether public or private, and the use to which such

vehicle is being devoted at the particular time in question. If the vehicle is privately owned, in order to be classed as an emergency vehicle under subdivision (b), *supra*, if must be used in enforcing the provisions of the Vehicle Code. On the other hand, if it is publicly owned, it can be classed as an emergency vehicle under subdivisions (a) and (b) of said section 44, *supra*, only if it is being used for the purpose of enforcing the provisions of the Vehicle Code, or for traffic patrol duty, or in responding to emergency calls.

The complaint herein alleged that the motorcycle was owned by respondent, but it developed at the trial that title to the machine was in the City of Alhambra and that respondent was buying it on the instalment plan, the city allowing him $30 per month for its operation and maintenance. Thereupon, respondent was permitted by the court to amend his complaint to show that "at all times herein mentioned, the City of Alhambra was the registered and legal owner of a certain motorcycle bearing 1936 license #E–1274; that at the time of the accident hereinafter mentioned, the plaintiff was vendee under a conditional sales contract wherein the City of Alhambra agreed to sell said motorcycle to the plaintiff for the sum of $239.25, and said plaintiff had agreed to pay to said City of Alhambra on account of said conditional sales contract the sum of $239.25."

As to the question of ownership, the trial court gave no instruction to the jury in that regard, and refused to give an instruction with reference thereto which was requested by appellant; but charged the jury as a matter of law that respondent was operating an authorized emergency vehicle.

Appellant's contention that this was error on the part of the trial court must be sustained for the reason that in addition to deciding whether or not respondent was making an emergency call, the question of ownership of the said motorcycle, as well as the determination as to whether or not respondent's motorcycle was an authorized emergency vehicle within the definition of section 44 of the Vehicle Code, should have been submitted to the jury.

*Spencer* v. *Schiffman*, 119 Cal. App. 746 [7 Pac. (2d) 361], was a case in which two motorcycle officers were responding to an alleged emergency call which was in fact a call to investigate an accident, and were traveling at the rate

of 37 miles per hour. Upon reaching an intersection the rate was reduced to 25 miles per hour, at which speed a collision occurred between the motorcycle and an automobile, in which the officers were injured. The court there held that the police officers were negligent; that they were not protected by any provision of the California Vehicle Act, and damages were denied. It was there stated at page 748: "Apparently what the plaintiffs relied upon as a justification for their failure to attempt to stop the motorcycle and to avert or avoid the happening of the accident, was the fact that they were police officers and as such, in the performance of their official duty, were on an errand the object of which was to investigate the facts concerning an accident which theretofore had occurred and 'to render all the aid possible'. . . . As far as the record discloses neither of the plaintiffs knew or had been informed that in connection with the particular accident which they were on their way to 'investigate' and to render 'aid', any person had either violated the law, or was charged with or suspected of having done so. The mission of the plaintiffs was entirely civil in its nature and the character of the services proposed to be rendered by plaintiffs had no relation to any known or suspected criminal act on the part of any person whomsoever. It is therefore clear that . . . the line of duty in which the plaintiffs in the instant case were engaged at the time and place of the accident in question did not place them in a position where they legally might claim the benefit which the law bestows upon police officers when they are engaged in those duties which are generally described in the statute ·to which reference has been had." See, also, *Falasco* v. *Hulen,* 6 Cal. App. (2d) 224 [44 Pac. (2d) 469]; *Hopping* v. *City of Redwood City,* 14 Cal. App. (2d) 360 [58 Pac. (2d) 379].

It was error for the trial court to charge the jury that "The plaintiff at the time of the accident was operating an authorized emergency vehicle." Such issue should have been submitted to the jury for its determination. Because of this conclusion, it is deemed unnecessary to pass upon the other points raised by appellant.

The judgment is reversed.

Doran, J., and White, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 8, 1939.